DELLINGER v. GULF PRODUCTION CO. et al. (No. 477.)

(Court of Civil Appeals of Texas. Beaumont. June 30, 1919. Rehearing Denied Oct. 15, 1919.)

1. ESTOPPEL ⬿72—TO DENY PURCHASER OF MORTGAGE WAS INNOCENT PURCHASER.

The purchaser of a mortgage and note from bank under representations that another indorsed note secured by another mortgage had been paid, such other note being in the hands of the bank which delivered it to purchaser together with a release thereof, was protected against such other note, where it belonged to a third person who had permitted it to come into the hands of the bank.

2. MORTGAGES ⬿338—WHO ENTITLED TO RESTRAIN MORTGAGE SALE.

A holder of a junior mortgage is not entitled to enjoin a sale under a senior mortgage on the ground that he desires to pay the senior mortgage to protect his junior mortgage and to be subrogated to the rights of a senior owner, although a release of the junior mortgage has been executed by an unauthorized person, where the note secured by the junior mortgage and a release are deposited in court to be dealt with according to the rights of the parties, and the purported release has never been recorded.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit by E. Dellinger against the Gulf Production Company and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Stevens & Stevens, of Houston, for appellant. Rowe & Kay, of Houston, C. W. Nugent, of Galveston, D. Edward Greer, of Houston, and R. E. Hardwicke, of Ft. Worth (John E. Greene, Jr., of Houston, of counsel), for appellees.

WALKER, J. On petition of E. Dellinger, complaining of Gulf Production Company, American National Insurance Company, and American Bank & Trust Company, on the 3d day of June, 1918, J. D. Harvey, judge of the Eighteenth judicial district of Harris county, Tex., granted to appellant a temporary restraining order, restraining the defendants from selling lands hereinafter described and situated in Harris county, Tex., and set the cause down for hearing at the courthouse in Harris county on the 6th day of June, 1918. This order was granted on appellant's petition alleging, substantially, the following facts:

That on the 20th day of February, 1914, L. M. Hemphill, being the owner of 300 acres of land in Harris county out of section No. 2, H. T. & B. Ry. Company survey, executed a deed of trust upon the same to secure R. A. Henderson in the payment of a promissory note for $1,000, which note was, on the 1st

day of March, 1915, by an instrument duly placed of record, by the said Hemphill extended until the 20th of February, 1916, and on the 30th day of January, 1917, the note and mortgage on said 300 acres of land were assigned and transferred to the defendant American National Insurance Company. That on the 18th day of March, 1916, by an instrument duly executed and recorded, said note was extended until the 20th day of February, 1921. That on the 3d day of November, 1915, the said L. M. Hemphill executed a deed of trust or mortgage upon another 300 acres in the same section to secure the American Bank & Trust Company in the payment of a note for $2,250 due on the 3d day of November, 1915. That on the 24th day of November, 1915, the said Hemphill conveyed all of said section, containing 622½ acres of land to Mrs. M. R. Hemphill, the wife of W. L. Hemphill. On the 23d of December, 1915, M. R. Hemphill, joined by her husband, W. L. Hemphill, executed a deed of trust to A. E. Hamblen, as trustee, for the purpose of securing John H. Miller in the payment of a note in the sum of $3,000, due three years after the 23d of December, 1915, which deed of trust conveyed to the said Hamblen, as trustee, all of said section of land. That on the 20th day of July, 1916, the said M. R. Hemphill, joined by her husband, W. L. Hemphill, executed an additional mortgage upon all of said section No. 2, securing the American National Insurance Company in the payment of a note in the sum of $4,500, due three years after date; it being recited in said last-mentioned mortgage as follows:

"And, whereas, the money advanced under this instrument and secured hereby was used for the purpose of taking up and extending two certain promissory notes, the first being in the sum of twenty-two hundred fifty ($2,250) dollars, on a portion of the land hereby conveyed, said note being payable to the American Bank & Trust Company, and secured by a deed of trust duly recorded in the deed of trust records of Harris county, Texas, and the second note being in the sum of one thousand ($1,000.00) dollars, secured by a portion of the land herein conveyed, said note being executed by L. M. Hemphill, on February 20, 1914, and being payable to the order of R. A. Henderson and secured by a deed of trust recorded in volume 118 at page 374 of the deed records of Harris county, Texas."

That on the 5th day of July, 1916, the said Miller, being then the owner and holder of said note above described, executed by M. R. and W. L. Hemphill, executed for a valuable consideration a written assignment, transferring the said $3,000 note to the plaintiff below, but which was not recorded until the 16th day of May, 1918. At the time of the transfer of said note and mortgage by Miller to Dellinger, Miller did not deliver the note to the plaintiff; it being understood that the

same would be subsequently delivered to him. It being alleged further that as a matter of fact said Miller had turned said note over to an agent of the defendants American Bank & Trust Company and American National Insurance Company at the time the last mortgage was executed to secure the $4,500 note. It being further alleged:

"Your petitioner is informed and believes that said note was simply delivered to the agent of said American National Insurance Company and said American Bank & Trust Company to be inspected by them under an agreement with the said Miller that his said note and mortgage was to be considered as a second mortgage to the new mortgage which was being executed by the said Hemphill to the American National Insurance Company. That no consideration whatever was paid by either of said defendants for said note of said Miller and they were never innocent holders of the same; the purpose as above set forth being only an arrangement by which the Miller mortgage was to be considered as a second mortgage."

That on the ——— day of April, 1918, the American National Insurance Company assigned and transferred the $4,500 note, together with the lien securing the same, to the defendant Gulf Production Company, and that on the ——— day of April, 1918, the defendant American Bank & Trust Company executed a purported release of the Miller note and mortgage; plaintiff alleging:

"All of which was done in fraud of the rights of your petitioner, the said American Bank & Trust Company not being the legal holder of said note, but as a matter of fact your petitioner was at said time, and now is, the legal owner and holder of said note and the same is unpaid."

That purporting to act as substitute trustee under the deed of trust securing the $4,500 note, E. I. Kendrick had advertised same for sale; plaintiff alleging that the notices were posted by the trustee in person, and not by the sheriff or any constable of Harris county, Texas, and further alleging as follows:

"That on, to wit, the 28th day of May, 1918, your petitioner, through his attorney, made tender of payment to the said Gulf Production Company in writing in manner and form as follows:

"'I have been advised that you have purchased from the American National Insurance Company the note of W. L. Hemphill and M. R. Hemphill, dated July 19, 1916, due January 1, 1920, with interest at the rate of ten per cent., payable annually on the first day of January, which note is secured by a deed of trust on H. T. & B. Company survey No. 2, situated in Harris county, Texas. This is to advise that on the 5th day of July, 1916, J. H. Miller, who held a mortgage upon the same property to secure a note in the sum of three thousand dollars ($3,000.00), dated the 23d day of December, 1915, and due on or before three years after date, assigned said mortgage to me. J. H. Miller was to deliver the note to me. I have since learned that this note was delivered to an agent of either the American National Insurance Company or of the American Bank & Trust Company simply for the purpose of having an opportunity to inspect said note. This note was never assigned by Mr. John Miller to either of said companies and the purported release of the same, now held by you, is absolutely void, since said note has never been paid and was never assigned by Miller to any other person than myself.

"'Learning that said note is now in your possession, I respectfully request you to deliver said note to me. And in this connection, as a junior mortgagee, I hereby tender you the full amount of the note above set forth, purchased by you from the American National Insurance Company with interest and attorneys' fees, as I desire to become subrogated as the holder of said note in order to protect myself as a junior mortgagee.

"'The transfer of the lien from J. H. Miller to myself is recorded in volume 158, page 357 of the records of mortgages of Harris county, Texas.'

"And that on, to wit, the 29th day of May, 1918, your petitioner received the following letter from said Gulf Production Company:

"'I acknowledge receipt of your letter of yesterday in behalf of Mr. Dellinger concerning the Hemphill $3,000 note, which you state is owned by Mr. Dellinger and the Hemphill $4,500.00 note which is owned by the Gulf Production Company, the latter being secured by a prior lien on H. T. & B. Co. survey No. 2, Harris county. As I understand your letter Mr. Dellinger offers to pay in full the note held by the Gulf Production Company, so that he may be subrogated to the rights of such company, being a junior mortgagee. The company will, of course, be glad to accept payment of the note and upon payment will cancel the obligation and release the deed of trust. As you know, I refused to recommend that the company accept payment and transfer the obligation so whatever rights you obtain by payment must be upon the ground of subrogation.

"'If you will advise me what day you desire to take up the note, I will have the interest figured accurately. Interest in the sum of $450.00 was due January 1, 1918, and this item as well as the principal bears interest at the rate of 10 per cent. per annum. The amount due as attorneys fees is 10 per cent. of the total amount, but it is satisfactory to let this item remain at $512.19, being the amount which was estimated as attorneys fees at the time the company purchased the obligation. In other words, the company does not desire to demand anything but what was paid out in the purchase of the note plus interest from that date. For this reason no charge will be made on account of expenses for posting notices of sale.

"'It is true that I have in my possession the $3,000 note, which was turned over to me by Judge Nugent as attorney for the American National Insurance Company. I also have formal release of lien securing this note, same having been executed by the American Bank & Trust Company. It was, of course, represented to me that I believed that this note had been paid. I have written to Judge Nugent asking that he give me the facts. If what you state is correct, and by the way Mr. Hemphill says that

if the note has been paid he knows nothing about it, then, of course, I shall be glad to turn over to you the note which is in my possession and the release also which has not been recorded. The note itself bears the indorsement of Mr. Miller.

"'Inasmuch as sales day is Tuesday I request that you notify me immediately with respect to your paying the $4,500.00 note.'

"That while your petitioner is ready and willing to pay off said forty-five hundred dollars ($4,500.00) note in order that he may become subrogated as junior lien holder of the same, nevertheless, he is entitled to have said note, executed by the said Hemphills and payable to the order of the said J. H. Miller in the sum of three thousand dollars ($3,000.00) delivered to him and that until said note is delivered to him he is not in a position to properly enforce his rights in the premises. He is further entitled to have that certain purported release of the said Miller note and lien executed by the American Bank & Trust Company about the ——— day of April, 1918, rescinded and canceled. That said release is either now in the possession of the Gulf Production Company or has been placed of record by said Gulf Production Company.

"That said American Bank & Trust Company in executing said purported release of the lien of said J. H. Miller note was unauthorized in that neither of the defendants above named had ever acquired any right, title, or interest in said note nor were either of said defendants a legal holder of said note and that neither of said defendants were bona fide holders of said note for value, hence the purported release of the lien securing said Miller note was done in fraud of your petitioner's rights and for the purpose of apparently canceling of record his junior mortgage lien upon the above described premises.

"That your petitioner stands ready and willing to pay off the prior lien now held by the said Gulf Production Company, but that he is unable to do so in that he cannot raise the funds so long as the said Miller note, which is actually owned by him, together with the lien securing the same, has apparently been released and discharged, and that the action of the said American Bank & Trust Company, and the American National Insurance Company is, so your petitioner believes, a conspiracy for the purpose of defrauding your petitioner out of his just rights in the premises, in that said defendants are attempting to make it appear that the said junior mortgage lien owned as aforesaid by your petitioner is not in existence, and that the same has been paid off and discharged; whereas, the same is a valid and existing lien and is unpaid and your petitioner is the owner of the said Miller note and the lien securing the same.

"That your petitioner, on, to wit, the 29th day of May, 1918, again applied to the said Gulf Production Company for the delivery of said note and has requested the said Gulf Production Company to procure a cancellation of said fraudulent release executed as aforesaid by said American Bank & Trust Company, but that said defendants have failed to do so. That if said fraudulent release is canceled and your petitioner's claim is placed in statu quo, he is ready, willing and able to pay off and discharge the said note held by said Gulf Production Com-

pany in order that he may become subrogated as the holder of the same.

"Your petitioner prays that E. I. Kendrick as a substitute trustee be made a party defendant hereto and that your honor grant your most gracious writ of injunction restraining the Gulf Production Company and the said E. I. Kendrick as trustee from selling said land on the 4th day of June, 1918, as above set forth, and that your honor issue a mandatory injunction requiring the Gulf Production Company to deliver the three thousand dollars ($3,000.00) note, payable as aforesaid, to J. H. Miller and now owned by your petitioner into the registry of this court until all matters appertaining thereto have been finally and fully adjudicated.

"He further prays that the court decree your petitioner to be the owner of said J. H. Miller note and that the purported release of the lien securing the same, fraudulently executed as aforesaid by said American Bank & Trust Company, and now in the possession of said Gulf Production Company be canceled and held for naught. Your petitioner here offers to do equity and is ready to pay to the said Gulf Production Company or into the registry of the court the amount due upon said forty-five hundred dollars ($4,500.00) note held as aforesaid by the said Gulf Production Company.

"He further prays upon final hearing for full, general, and equitable relief."

The defendant American Bank & Trust Company answered, specially denying that it has ever in any manner, through its attorneys, officers, or agents, or otherwise, conspired, directly or indirectly, with the Gulf Production Company or any other party or person to defraud the plaintiff or in any manner deprive plaintiff of any of his rights in the premises, and further disclaims all right, title, and interest whatsoever in or to any of the notes secured or lien referred to therein, and further that long before the institution of the suit it had parted with all its right, title, interest, and equities in and to said land, notes and securities, having for a valuable consideration sold and assigned all of its right to the American National Insurance Company, and therefore had no interest in the subject-matter of this suit.

The defendant American National Insurance Company answered by general demurrer, general denial and special denial, and disclaimer, as pleaded by the American Bank & Trust Company.

The defendant Gulf Production Company answered by general demurrer and general denial, and specially that it had acquired mineral rights in the lands described in plaintiff's petition, and that it was notified by the American Bank & Trust Company during April, 1918, that it intended to foreclose its lien on the property given to secure the $4,500 note; that this defendant offered to purchase the $4,500 note and lien, provided the lien given to secure the $3,000 note had been extinguished; that the attorney for the American Bank & Trust Company and American National Insurance Com-

pany stated to this defendant that he understood that the $3,000 note had been paid and canceled, but for some reason no formal release had been executed and recorded; however, he had obtained formal release from the American Bank & Trust Company and the note itself, bearing indorsement of said John Miller; and that it was in the possession of the insurance company, having been turned over to it by the bank; defendant, believing the representations to be true, purchased the $4,500 note, paying the American National Insurance Company $5,634.15, and thereupon the insurance company transferred and delivered to it the said $4,500 note, and also said $3,000 note, together with release of the latter, together with a great many other papers, documents, canceled notes, etc., relating to said matters; that, after it had bought the $4,500 note, this defendant was notified by the plaintiff that the $3,000 note had never been paid; that it was not owned by the American Bank & Trust Company or the American National Insurance Company, but was the property of this plaintiff, who had neglected to place of record his transfer from the aforesaid Miller; "whereupon this defendant advised said plaintiff that it did not know the facts about the matter of ownership, but understood and believed that the note had been paid and canceled, and if not, and it was owned by plaintiff, and the same could be proved, then this defendant would doubtless deliver the same to plaintiff; but in this connection it is shown that, if said note has not been paid and canceled, this defendant, as a matter of law, has title to the same, inasmuch as said note, together with all other matters in connection with the Hemphill loan, were transferred to it by the American National Insurance Company for valuable consideration without any notice of any claim in behalf of plaintiff, or any one else, with respect to the title to said $3,000 note. This defendant, however, in order that the matter of ownership of said note may be determined, and in order that the plaintiff may be fully protected, has, contemporaneously with the filing of this answer, filed with the clerk of this court, for safekeeping, said $3,000 note and the release of same executed by the American Bank & Trust Company, said note and release to be held by the clerk, subject to the orders of the court in disposing of this litigation."

Defendant denied that the plaintiff had offered to pay off the $4,500 note, and further denied any conspiracy with the American National Insurance Company or any one else for the purpose of defrauding plaintiff, and further alleged that at the time it bought the $4,500 note it did not know that plaintiff was asserting any claim to the $3,000 note. This defendant prays as follows:

"Premises considered, this defendant says that plaintiff ought not to have or recover anything whatever of this defendant, and that it should be permitted to have the property covered by the lien securing its $4,500 note sold, and the proceeds thereof applied toward the payment of same without any interference on the part of plaintiff, or any one else, especially since plaintiff admits that the lien securing the $4,500 note is a prior, valid, and subsisting lien, and any lien which he holds on the same property is a second lien."

All pleadings by all parties were duly verified.

This case came on for hearing on the 6th day of June, 1918, on the pleadings of the parties, no testimony being offered, and thereupon the court entered the following order:

"And all parties having appeared, and the court, having considered the pleadings and the argument of counsel, is of the opinion that the plaintiff is not entitled to the injunction prayed for there being no equity in his bill and that the demurrers of the Gulf Production Company and the other defendants should be and they are hereby sustained.

"Whereupon it is ordered, adjudged, and decreed that said temporary injunction be denied, to which action the said plaintiff in open court excepted and gave notice of appeal; wherefore it is ordered, adjudged, and decreed that, upon the giving of good and sufficient bond in the sum of $1,000, payable and conditioned as required by law, the restraining order heretofore granted shall remain in effect and in full force pending said appeal if same is perfected."

Appellant has only one assignment of error, which is as follows: .

"The district judge erred in holding that there was no equity in the bill, since the allegations of the plaintiff's petition showed that he was the owner and holder of the debt in the sum of three thousand dollars ($3,000) and secured by mortgage upon the premises, and that it was agreed that this mortgage should be considered by all of the parties as a junior mortgage, and that a release of this mortgage had been executed by a party not authorized to do so in fraud of plaintiff's rights; hence, the plaintiff, as a junior mortgagee, was entitled to have said purported release of his mortgage canceled, in order to afford him an opportunity to pay off the first mortgage held by the defendants and thus become subrogated to the rights thereunder, since, in order to become so subrogated, it was essential that the junior mortgages should establish his right as such, which he could not do until the alleged wrongful acts of the defendants had been undone, as set forth in plaintiff's petition."

[1, 2] It appears from the answer of the defendants that one of the grounds of relief prayed for by appellant was voluntarily agreed to, in that the $3,000 note and the release were deposited with the clerk subject to the future orders of the court; it further appearing that this purported release has never been recorded. From the pleadings it also appears that the Gulf Production Com-

pany bought the $4,500 note under representations that the $3,000 note had been paid; that the note was indorsed by the payee, Mr. Miller, and was in the possession of the American National Insurance Company; and that the release was executed by American Bank & Trust Company. On these allegations the Gulf Production Company was certainly protected against the $3,000 note. Further, it does not appear in any way that the plaintiff is injured, so far as these defendants are concerned, by the execution of this release. The release and note are in the trial court and will be delivered to him if he is the owner of the same. If he is the holder of the junior mortgage, or if, in good faith, he believes he is the holder of the junior mortgage, and to protect his rights he pays off this $4,500 note to the Gulf Production Company, equity will subrogate him to all the rights, claims, and interests of the Gulf Production Company.

We cannot see how the execution of this release in any way effects his ability to borrow money with which to take up the $4,500 note, nor does his petition show any ground to delay the sale pending such negotiations. We fully agree with the trial court in holding:

"That the plaintiff is not entitled to the injunction prayed for, there being no equity in his bill."

Finding no errors in this proceeding, the judgment of the trial court is in all things affirmed.